SMALL, P.J.T.C.
The defendant, Brick Township, has moved in both cases to dismiss plaintiffs’ complaints for failure to comply with N.J.S.A. 54:4-34, as amended by L. 1979, c. 91 (“Chapter 91”), which requires taxpayers to respond to an assessor’s request for income and expense information within 45 days or have its tax appeal dismissed or severely restricted. See Ocean Pines, Ltd. v. Pt. Pleasant, 112 N.J. 1, 547 A.2d 691 (1988). Plaintiffs argue that enactment of L. 2001, c. 101 (“Chapter 101”) amending N.J.S.A. 54:4-23, now requires that requests under Chapter 91 be deemed untimely if made less than 45 days before November 1 of the pretax year in a municipality which has neither applied for approval of a reassessment plan nor is conducting a revaluation. Plaintiffs rely on the principles enunciated in Westmark Partners v. West Deptford Tp., 12 N.J. Tax 591, 596 (Tax 1992) (stating that, to be effective, a Chapter 91 request must permit the assessor to make use of the information provided in making his or her assessments due on January 10 and thus must be made at least 45 days before January 10).
[T]he assessor, in the context of Ms administrative function of levying annual property assessments based upon an income producing property’s October 1 pretax year valuation, must request the income data permitted under chapter 91 within time for it to be incorporated in his determination of the correct assessments to be submitted to the county board by January 10 of the lax year. By the adoption, in 1979, of the chapter 91 amendment to N.J.S.A. 54:4-34, the Legislature’s purpose was to provide assessors with additional authority to secure as much information as possible to aid in ascertaining the fair market value of income-producing property. In so doing, however, the Legislature obviously intended that the income data be sought prior to setting assessments to be forwarded to the county boards.

[Ibid.].

*228 Because the requests in these cases were made on October 14 and October 15, only two weeks before November 1 (the last date to file an application for approval of a compliance plan under Chapter 101), plaintiffs argue that the requests were untimely and defendants’ motions must be denied.
For the reasons explained below, I find that Brick Township’s Chapter 91 requests were timely and its motions will be granted.
I. Chapter 91
Chapter 91 prescribes a harsh penalty, dismissal of a taxpayer’s tax appeal, if the taxpayer has failed to timely respond to an assessor’s request for income and expense information about the income producing property for which a tax appeal is filed.
Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor’s valuation and assessment until respect to income-producing property where the owner has failed or- refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.
[N.J.S.A. 54:4-34 (emphasis added).]
Because of constitutional considerations of due process, the courts have provided for limited appeals even when the taxpayer has completely ignored the request. Ocean Pines, Ltd,., supra, 112 N.J. 1, 547 A.2d 691. The courts have also imposed additional specific requirements on the assessor before the motion to dismiss will be granted. See Southland Corp. v. Dover Tp., 21 N.J. Tax 573, 578-86 (Tax 2004) (citing numerous cases which hold, for example, that unanswered requests for Chapter 91 information are ineffective to support a motion to dismiss if the requests do not include a copy of the statute, are unclear as to which year or property they apply to, or are made by someone other than the *229 assessor, or are made to the owner of non-income producing property).
II. Chapter 101
In 2001, the Legislature enacted L. 2001, c. 101, which provides:
[W]hen the assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent with the purpose of securing uniform taxable valuation of property according to law for the purpose of taxation, or that the assessment of property comprising all or part of a taxing district is not in substantial compliance with the law and that the interests of the public will be promoted by a reassessment of such property, the assessor shall, after due investigation, make a reassessment of the property in the taxing district that is not in substantial compliance, provided that (1) the assessor has first notified, in writing, the mayor, the municipal governing body, the Division of Taxation in the Department of the Treasury, the county board of taxation, and the county tax administrator of the basis of the assessor’s determination that a reassessment of that property in the taxing district is warranted and (2) the assessor has submitted a copy of a compliance plan to the county board of taxation and to the Division of Taxation for approval.
[N.J.S.A. 54:4-23 (emphasis added).]
The compliance plan must be submitted before November 1 of the pretax year. N.J.A.C. 18:12A-1.14(i)2; see also Memo of Steven Sylvester, Assistant Director of the Division of Taxation, to Municipal Assessors, County Tax Administrators and County Tax Board Administrators, dated September 12, 2003 (stating that “information that justifies the proposed changes must be submitted on or before November 1, [of the pretax year]. No application will be accepted after November 1”).
Thus, plaintiffs argue that the enactment of Chapter 101 of the laws of 2001, requiring that a municipality seek (prior to November 1) and obtain permission to reassess some, but not all, of the properties in the municipality, imposes a further requirement that the Chapter 91 requests be made in adequate time for the assessor to receive the answers before making his compliance plan application.
III. Chapter 101 Does Not Change the Time Before Which a Chapter 91 Request Must be Served
In the two cases before me, it is undisputed that the assessor sent requests to the taxpayers dated October 14 and October 15, 2004, respectively, and that no response was received from either *230 taxpayer. The only challenge to the validity of the requests is that they were made and received too late for the taxpayers to respond in time for the assessor to make use of the information in his application to the County Board of Taxation for a reassessment under the November deadline required by Chapter 101. There is no question that the Chapter 91 request was timely under the law as explained in Westmark Partners, supra, 12 N.J. Tax at 596 and Delran Holding Corp. v. Delran Tp., 8 N.J. Tax 80 (Tax 1985). In those cases, this court held that the request must be made at least 45 days before the assessor is required to file his (or her) book of assessments with the County Board of Taxation, i.e., January 10. See also N.J.S.A. 54:4-35.
Here, the plaintiffs argue that under Chapter 101, an assessor could not change the assessment of the subject or any property in the assessing district without conducting a complete revaluation (which was not being done in Brick for the 2005 year) or without an approved compliance plan under Chapter 101, which must be applied for by November 1. See N.J.S.A. 54:4-23; N.J.A.C. 18:12A-1.14(i). Extrapolating from the logic of Westmark Partners, supra, plaintiffs argue that the assessor could not use the information requested by the October 14 and 15 letters to change the subjects’ or any property’s assessment for the 2005 year. Thus, plaintiffs contend that the enactment of Chapter 101 effectively moves the last date for making a Chapter 91 request to 45 days before November 1 (i.e., mid-September) in a municipality which is not undergoing a complete revaluation and does not yet have permission to assess some, but not all, of its properties. Plaintiffs therefore argue an October 14 or 15 request is simply too late. Plaintiffs’ argument presumes (1) that the only permitted use for the income and expense information is to reassess the subject or other properties for the current year, and (2) that the income and expense information is essential for the compliance plan. The logic for that assertion is the foundation for the determinations in Westmark Partners, supra, and Delran Holding, supra. The argument fails for three reasons.
*231 A. Changes in Assessments Do Not Always Require an Approved Compliance Plan
First, BASF Corporation v. 'Town of Belvidere, 22 N.J.Tax 550, 563 (Tax 2005) holds that even after the passage of Chapter 101, an assessor may change the assessment of a single property without getting approval of a compliance plan under N.J.S.A. 54:4-23 as amended by Chapter 101. Thus, even though the requested information would have been received after November 1, 2004, the assessor still could have used that information to change the assessment of either of the subject properties or another property in Brick without having an approved compliance plan or violating the rules against spot assessments. See West Milford v. Van Decker, 120 N.J. 354, 362, 576 A.2d 881 (1990); Regent Care Center, Inc. v. City of Hackensack, 362 N.J.Super. 403, 411-12, 828 A.2d 332 (App.Div.2003) affg 20 N.J. Tax 181 (Tax 2001). Reassessing a single property if done properly is consistent with the assessor’s obligation to “maintain,” (i.e., keep up to date) the assessment lists. Regent Care Center, supra, 362 N.J.Super, at 411-12, 828 A.2d 332, (cited in BASF Corp. v. Belvidere, supra, 22 N.J. Tax at 565); Tri-Terminal Corp. v. Borough of Edgewater, 68 N.J. 405, 413-14, 346 A.2d 396 (1975).
B. Compliance Plans Do Not Make Use of Income and Expense Data
Second, although the assessor might be precluded from using the information collected in response to a Chapter 91 request in making a timely submission of a compliance plan due on November 1, nothing would prevent him from using the information to actually make the assessment due on January 10, even if the information was not used in submitting the compliance plan. BASF, supra, tells us that assessors may still change an assessment without submitting a compliance plan. 22 N.J. Tax at 563. Further, N.J.A.C. 18:12A-1.14(i)(3), the regulation which explains the criteria for approving a compliance plan, makes no mention of income and expense data — it speaks of sales data, assessments, ratios, and other statistics, but not income and expenses. Form CP (referred to in the regulation and attached to Assistant *232 Director Sylvester’s memorandum), the form on which assessors must submit their compliance plans, has no space for income or expense data. No regulation or advice under Chapter 101 requires the use of Chapter 91 income and expense information in the compliance plan to be submitted prior to November 1.
C. Chapter 101 Did Not Explicitly or Implicitly Change Case Law Interpreting Chapter 91
There is no mention of Chapter 91 in the history of the enactment of Chapter 101. The court will not read the latter statute as imposing limitations on assessors greater than those already imposed by Chapter 91 and decided case law. In interpreting statutes, it is presumed that the “Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes.” Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969) (cited in DiProspero v. Penn, 183 N.J. 477, 494, 874 A.2d 1039 (2005); N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n. 6, 814 A.2d 1028 (2002)). Therefore, the court presumes that the Legislature was aware of the court-imposed requirement that under N.J.S.A. 54:4-34, assessors must send Chapter 91 requests out at least 45 days before January 10. If the Legislature intended to repeal or change this deadline by enactment of Chapter 101, it must have done so expressly. Repeal by implication is disfavored in the law. Brewer, supra, 53 N.J. at 174, 249 A.2d 388. “A repeal by implication requires clear and compelling evidence of the legislative intent, and such intent must be free from reasonable doubt. Every reasonable construction should be applied to avoid a finding of implied repealers.” Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 280-81, 486 A.2d 818, cert. denied sub nom Demarest v. Mahwah, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985) (citations omitted) (cited and discussed in American Fire and Casualty Co. v. Director, Div. of Taxation, 21 N.J. Tax 155, 167-68 (Tax 2003), reversed on other grounds, 375 N.J.Super. 434, 868 A.2d 346 (App.Div.2005), certif. granted, 183 N.J. 591, 874 A.2d 1109 (2005) (argued Nov. 30, 2005)). Here, there is nothing in N.J.S.A. 54:4-23 or in the legislative history of Chapter 101 to indicate a legislative intent to repeal or change that part of Chapter 91 as interpreted by the *233 courts requiring assessors to mail out requests at least 45 days before January 10.
A taxpayer who fails to respond to clear requests under Chapter 91 for information that an assessor can use in making assessments cannot excuse its failure to comply with the statute with logic not adopted by the Legislature. Plaintiffs cannot place greater restrictions on the assessors than those already imposed by the courts without an explicit statement by the Legislature. See cases collected at Southland v. Dover, supra, 21 N.J. Tax at 578-86. In Westmark Partners, supra, 12 N.J. Tax at 596, and Delran Holding, supra, 8 N.J. Tax at 83-84, this court held that Chapter 91, amending N.J.S.A. 54:4-34, could only apply if the information requested could be used in setting assessments. Here, I hold that Chapter 101, intended to restrict certain types of partial reassessments, cannot further restrict the time at which Chapter 91 requests must be made because the information collected in response to a Chapter 91 request can still be used in making assessments.
The defendants’ motions in these cases are granted. The taxpayers are entitled to reasonableness hearings under Ocean Pines, supra. Orders in each case accompany this opinion.