NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2466-12T1

WATERSIDE VILLAS HOLDINGS, LLC,

     Plaintiff-Appellant,

v.

MONROE TOWNSHIP,

     Defendant-Respondent.

| APPROVED FOR PUBLICATION |
| --- |
| January 24, 2014 |
| APPELLATE DIVISION |

Argued November 18, 2013 — Decided January 24, 2014

Before Judges Harris, Kennedy and Guadagno.

On appeal from the Tax Court of New Jersey, Docket No. 2583-2011.

Kevin S. Englert argued the cause for appellant (The Irwin Law Firm, attorneys; Mr. Englert, on the brief).

Nancy Stewart argued the cause for respondent (Shain, Schaffer & Rafanello, attorneys; Richard A. Rafanello, of counsel; Ms. Stewart, on the brief).

The opinion of the court was delivered by

KENNEDY, J.A.D.

Plaintiff Waterside Villas Holdings, LLC, appeals from the December 28, 2012 final order of the Tax Court dismissing its complaint contesting the 2011 property tax assessment on its

property in defendant Monroe Township. The Tax Court had earlier granted, in part, defendant's motion to dismiss plaintiff's complaint for its failure to respond to a municipal request for income and expense information as required by N.J.S.A. 54:4-34, often referred to as "Chapter 91,"[1] subject to plaintiff's right to a "reasonableness hearing" pursuant to the holding in Ocean Pines, Ltd. v. Borough of Point Pleasant, 112 N.J. 1 (1988). Following the hearing, Tax Court Judge Gail L. Menyuk concluded that neither the data nor the methodology employed by the assessor in reaching the 2011 assessment were unreasonable or arbitrary and dismissed the complaint with prejudice.

On appeal, plaintiff raises the following arguments:

> POINT I: THE TAX COURT ERRED IN CONCLUDING THAT THE ASSESSOR SENT A VALID CHAPTER 91 REQUEST.
>
> A. The Assessor's Request Was Not "Clear And Unequivocal."
>
> B. The Assessor's Request Did Not Include A Copy Of The Statute. (Not Raised Below).
>
> POINT II: THE DATA AND METHODOLOGY USED BY THE MONROE ASSESSOR WERE ARBITRARY AND

---

[1] This name references the 1979 amendment to the statute that established the dismissal sanction "where the owner has failed or refused to respond to [the assessor's] written request for information . . . or shall have rendered a false or fraudulent account." See L. 1979, c. 91, § 1 (amending N.J.S.A. 54:4-34).

CAPRICIOUS AND THE RESULTING ASSESSMENT WAS UNREASONABLE.

A.  The Arbitrary And Capricious Standard Of Review Governs In An <u>Ocean Pine</u> Reasonableness Hearing.

B.  The Assessor's Income Approach To Value Was Based On Non-Market Data And Was Contrary To The Other Data Available.

C.  The Assessor Did Not Apply A True Common Level To His Value Conclusion For The Subject.

POINT III: THE ONLY FEASIBLE REMEDY IS A FULL TRIAL ON THE MERITS IN THE EVENT AN ASSESSMENT IS FOUND TO BE UNREASONABLE.

We have considered these arguments in light of the record and the applicable legal principles, and we affirm essentially for the reasons set forth by Judge Menyuk in her well-reasoned written opinion dated December 28, 2012. We add only the following with respect to plaintiff's arguments arising from its failure to respond to the notice tendered by defendant pursuant to <u>N.J.S.A.</u> 54:4-34.

## I.

Plaintiff purchased property in Monroe Township in 2004 and, after obtaining the requisite permits in 2006, completed construction of a 100-unit apartment complex in 2009. The Monroe Township tax assessor visited the property prior to the issuance of a certificate of occupancy in May 2009, and received from plaintiff's property manager a list of the rental units and the

rents to be charged for each unit. The rents included a discounted "first-year" rate, and progressively higher rates thereafter.

Employing the discounted "first-year" rents only, the assessor calculated the total annual rents, and then applied figures for expected vacancies and collection losses, an expense figure of forty-five percent, and a capitalization rate of eight percent to arrive at a market value of $14,945,800. After applying the Chapter 123 ratio for 2009, he arrived at an assessment of $6,707,700.[2] This assessment was carried over to tax years 2010 and 2011.

On August 13, 2010, the assessor sent a letter with enclosures to plaintiff by certified mail requesting a statement of income and expenses for the property. The enclosures included a form captioned "Annual Statement of Income and Expenses for Income Producing Property" with instructions, and a typed version of N.J.S.A. 54:4-34. The letter explained that the request for information was sent in accordance with N.J.S.A. 54:4-34 and instructed that "[u]nder 'Statement and Expenses'

_____

[2] While the assessor employed the income approach to valuation, he also checked his calculation by combining the cost of the land acquisition with the prospective construction costs, set forth in plaintiff's construction permit. This was not a traditional cost approach, but an approximation based on plaintiff's own construction figures. The assessor regarded the two figures he reached as relatively close.

[on the form] enter your recent twelve months (January 1, 2009 through December 31, 2009) operational cost to the extent that such cost is actually paid by management."

In addition, the assessor's letter to plaintiff stated,

> This request for the Income and Expense data is made by certified mail and includes a copy of the statutory language of N.J.S.A. 54:4-34, amended L.1979 C91 p.1, as required. The requested information must be submitted to this office within 45 days from the date this letter is received. In the event that you do not furnish this office with the requested Income and Expense data within the 45-day period, the law provides that you will be precluded from filing a tax appeal challenging the assessment of the property.
>
> . . . .
>
> If you have any questions with regard to this request or require any clarification relating to the information sought, kindly contact this office for further assistance.

Plaintiff received the request on August 16, 2010, and never responded. Consequently, after plaintiff filed its direct appeal of the 2011 assessment with the Tax Court, defendant moved to dismiss the complaint under the statute. Plaintiff opposed the motion and argued that "the language of the request leaves room for reasonable doubt whether an average property owner would understand what the assessor's looking for[.]"

Judge Menyuk rejected plaintiff's argument, finding "nothing contradictory or confusing" in defendant's request for

information and that "any reasonable person would understand what was meant."  She then granted defendant's motion, subject, as noted earlier, to plaintiff's right to a reasonableness hearing under Ocean Pines, supra, 112 N.J. at 11.

Plaintiff argues on appeal that the assessor's request was not "clear and unequivocal" and asserts that "[a] taxpayer is left to guess whether the assessor is looking for the most recent [twelve] months of information (August 2009 — July 2010) or January to December 2009."  Further, for the first time on appeal, plaintiff argues that the assessor's correspondence was fatally flawed because N.J.S.A. 54:4-34 requires an assessor to include a copy of the statute with the information request and that, in the case before us, "the text included with the assessor's correspondence omits the word 'may' from the phrase, '. . . and he may be examined on oath by the assessor . . . .'" We shall briefly address each of these arguments in the order presented.

## II.

N.J.S.A. 54:4-34 provides, in pertinent part, as follows:

> Every owner of real property of the taxing district shall, on written request of the assessor, made by certified mail, render a full and true account of his name and real property and the income therefrom, in the case of income-producing property, and produce his title papers, and he may be examined on oath by the assessor, and if he

A-2466-12T1

shall fail or refuse to respond to the written request of the assessor within 45 days of such request, or to testify on oath when required, or shall render a false or fraudulent account, the assessor shall value his property at such amount as he may, from any information in his possession or available to him, reasonably determine to be the full and fair value thereof. No appeal shall be heard from the assessor's valuation and assessment with respect to income-producing property where the owner has failed or refused to respond to such written request for information within 45 days of such request or to testify on oath when required, or shall have rendered a false or fraudulent account. The county board of taxation may impose such terms and conditions for furnishing the requested information where it appears that the owner, for good cause shown, could not furnish the information within the required period of time. In making such written request for information pursuant to this section the assessor shall enclose therewith a copy of this section.

[N.J.S.A. 54:4-34 (emphasis added).]

As noted earlier, the typed copy of the statute defendant sent to plaintiff omitted the word "may" which we highlighted in the statute above. Plaintiff did not respond to defendant's request within the statutorily required forty-five day period, does not dispute receiving the request, and concedes it made no inquiry of the assessor about what he was seeking.

We first address plaintiff's argument that it had no duty to respond to the request because it was not "clear and unequivocal." The purpose of N.J.S.A. 54:4-34

is to assist the assessor, in the first instance, to make the assessment and thereby hopefully to avoid unnecessary expense, time and effort in litigation.

. . . .

[The statute] goes to the very substance of assessing practices. By insuring to the assessor income information from the best available source, it seeks to relieve both the taxpayer and the taxing district of the time and expense of an adversary proceedings [sic] to review an assessment either in the county board of taxation or the Tax Court.

[Terrace View Gardens v. Dover Twp., 5 N.J. Tax 469, 471-72 (Tax 1982), aff'd o.b., 5 N.J. Tax 475 (App. Div.), certif. denied, 94 N.J. 559 (1983).]

This expression of the statute's purpose was adopted in Ocean Pines, supra, 112 N.J. at 7. The specific purpose of the forty-five day time limit for responses to assessor's requests is explained in the Statement, dated January 26, 1978, annexed to Finance and Appropriations Committee revision of Senate Bill 309, Leg. Sess. of 1979, as follows: "Committee amendments fix a forty-five day time period in which the income producing property owner must respond to the written request from the assessor. A specific time requirement is necessary to provide for an orderly procedure."

Moreover, while the assessor has an important statutory right to information necessary for proper and timely assessments, the assessor must clearly set forth the information

being sought when that right is exercised.  In <u>ML Plainsboro</u>

<u>Ltd. P'Ship. v. Plainsboro Twp.</u>, 16 <u>N.J. Tax</u> 250, 257 (App.

Div.), <u>certif. denied</u>, 149 <u>N.J.</u> 408 (1997), we explained that

Chapter 91

> confers authority upon the tax assessor to determine the scope of information to request from a taxpayer and a corresponding duty to give the taxpayer clear and unequivocal notice of the specific information which must be submitted.  Tax assessors are experts in the field of real estate valuation, <u>see</u> <u>N.J.S.A.</u> 54:1-35.25, while the owners of income producing properties include not only substantial business enterprises . . . but also small business persons who may have difficulty reading complex and confusing forms and may lack ready access to legal advice. Consequently, "the assessor's request notice to the taxpayer must be clear cut." <u>Summerton Shopping Plaza v. Manalapan Twp.</u>, 15 <u>N.J. Tax</u> 173, 177 (App. Div. 1995). Moreover, if there is room for reasonable doubt as to whether an average owner of an income producing property would understand an assessor's request to include a particular kind of information, the benefit of that doubt should be given to the taxpayer.  <u>Cf.</u> <u>Great Adventure, Inc. v. Jackson Twp.</u>, [ ] 10 <u>N.J. Tax</u> [230][,] 233 [(App. Div. 1980)] (noting that "the severity of the penalty for noncompliance provided for by <u>N.J.S.A.</u> 54:4-34, namely, the taxpayer's loss of his right to appeal the assessment, requires a strict construction of the statute"); <u>see also</u> <u>SAIJ Realty, Inc. v. Town of Kearny</u>, 8 <u>N.J. Tax</u> 191, 196-97 (Tax Ct. 1986).

See <u>Ocean Pines</u>, <u>supra</u>, 112 <u>N.J.</u> at 8 (explaining that the

statute encourages compliance with a "proper request" for

information); and Terrace View, supra, 5 N.J. Tax at 474 (referring to the taxpayer's refusal to comply with a "legal and reasonable request").

However, where the taxpayer receives a Chapter 91 request that it deems improper in some fashion, it may not simply ignore its statutory obligation to respond. Rather,

> the taxpayer must take action to challenge the request within the forty-five day statutory time limit, and to put the municipality on notice of its contention. In any event, the taxpayer cannot just sit by and do nothing until the assessment is finalized, as this taxpayer did, and thereafter seek to appeal the assessment by plenary review. Such conduct results in "unnecessary expense, time and effort in litigation." See Terrace View, supra, 5 N.J. Tax at 471-72.
>
> [Tower Center Assocs. v. Twp. of East Brunswick, 286 N.J. Super. 433, 438 (App. Div. 1996).]

Accord H.J. Bailey v. Neptune Twp., 399 N.J. Super. 381, 389-90 (App. Div. 2008); Morey v. Wildwood Crest Borough, 18 N.J. Tax. 335, 340 (App. Div. 1999), certif. denied, 163 N.J. 80 (2000).

Chapter 91 does provide a "safety valve" before the county tax board for taxpayers who cannot respond to a request for information for good cause. 1717 Realty Assocs. v. Borough of Fair Lawn, 201 N.J. 275, 276, n.2 (2010). In Ocean Pines, supra, 112 N.J. at 9, the Court did not address what would

constitute "good cause" for not furnishing requested information.

> Instead, the Court left that question open for determination on a case-by-case basis. [Ocean Pines, supra, 112 N.J. at 9]. However, as the Tax Court made clear in Terrace View (quoted with approval by the Supreme Court in Ocean Pines, 112 N.J. at 8):
>
>> Refusals on the part of the taxpayers to cooperate with local property assessors cannot be tolerated by this court. Legitimate requests for information by assessors to prepare assessments are actions which should be encouraged by this court. Taxpayers frequently complain of local property tax assessors and their work. Here the taxpayer had an opportunity to supply to the assessor information pertinent to the assessor's work. It failed and refused to do so without any explanation, and its attitude in failing to even respond to the assessor's legitimate statutory request is inexcusable.
>>
>> [[Terrace View, supra,] 5 N.J. Tax at 474-75.]
>
> Where the request is thought not to be "legitimate," in whole or in part, the taxpayer must do something to assert that contention before the assessment is imposed to avoid the statutory bar to appeal embodied in N.J.S.A. 54:4-34. Thus, as in Ocean Pines, "plaintiff's failure to respond in any fashion to the assessor's request precluded plaintiff from asserting a 'good cause' claim." Ocean Pines, supra, 112 N.J. at 9.

A-2466-12T1

> [<u>Tower Center Assocs.</u>, <u>supra</u>, 286 <u>N.J.</u>
> <u>Super.</u> at 439.]

In the case before us, we need not address the parameters of good cause because plaintiff simply ignored a clear and proper Chapter 91 request for information and never sought relief before the county tax board.[3]  The notice was sent to plaintiff by certified mail, and the accompanying letter, dated August 12, 2010, expressly requested "your recent twelve months (January 1, 2009 to December 31, 2009) operational cost . . . ."  It is specious to suggest that such clear and explicit language was equivocal or confusing in any respect.

---

[3] This is not a case where the information was not requested in time to assist the assessor in making the assessment and to diminish the likelihood of litigation.  <u>See</u> <u>West Mark Partners v. W. Deptford</u>, 12 <u>N.J. Tax</u> 591 (Tax 1992); <u>Terrace View</u>, <u>supra</u>, 5 <u>N.J. Tax</u> at 471-72.  In such a case, the information request may not be viewed as a Chapter 91 request, but rather a discovery demand, if first tendered after the taxpayer has filed its complaint. Consequently, the sanction required by Chapter 91 would not be available to the municipality.  <u>See</u> <u>Delran Holding Corp. v. Delran Twp.</u>, 8 <u>N.J. Tax</u> 80 (Tax 1985).  In addition, this is not a case where the property in question is not "income-producing" for which the statutory sanction is unavailable, <u>H.J. Bailey Co.</u>, <u>supra</u>, 399 <u>N.J. Super.</u> 381, or where the motion is brought outside the time required by <u>Rule</u> 8:7(e).  There may be other cases in which, for example, the request is so egregiously ambiguous in its identification of the property or in the instruction to the taxpayer that due process principles are offended.  <u>Cf.</u> <u>Ocean Pines</u>, <u>supra</u>, 112 <u>N.J.</u> at 9-11.  We expect that such a case would be rare.  <u>See</u> <u>Middletown Twp. Policeman's Benevolent Ass'n Local No. 124 v. Twp. of Middletown</u>, 162 <u>N.J.</u> 361, 367 (2000).  This is not the case before us, in any event.

Finally, we address plaintiff's argument that the omission of the word "may" in the copy of N.J.S.A. 54:4-34 defendant included with its information request, precluded relief under the statute. While we might, with justification, have elected to forego addressing this argument because plaintiff did not raise it before the Tax Court, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234-35 (1973) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available 'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" (internal citation omitted)), we nonetheless consider the argument, given that both parties have argued the issue in their briefs, and it is an issue likely to rise again in the future.

As we noted earlier, the statute was amended in 1979 to add the last three sentences to N.J.S.A. 54:4-34 providing that "no appeal shall be heard" where the property owner has failed to respond to the assessor's request within forty-five days, establishing the power of the county board to impose terms and conditions for furnishing the requested information, and requiring the assessor to enclose a copy of the statute with the

written information request.  As the Supreme Court noted in

Lucent Techs., Inc. v. Twp. of Berkeley Heights:

>        The originally-filed bill was amended
> by the Senate Revenue, Finance and
> Appropriations Committee (Committee), which
> articulated the reasons for the amendment to
> the statute in more expansive language than
> that used by the Sponsor.  The Committee
> explained its concerns as follows:
>
>> While current statutes provide the
>> assessor with a procedure whereby
>> an assessment can be made
>> notwithstanding the refusal of a
>> property owner to provide income
>> information, the property owner is
>> not subject to any penalty for not
>> disclosing property income
>> information.  The property owner
>> is free to appeal the assessment,
>> notwithstanding his refusal to
>> provide information which would
>> have affected the valuation, and,
>> perhaps, avoided the appeal from
>> the assessment.  Further, where an
>> appeal has been filed, the
>> assessor currently has no access
>> to information on which the
>> appellant is basing his appeal and
>> thus the assessor is unprepared to
>> testify in argument to the
>> appellant's representations.
>>
>> [Senate Revenue, Finance and
>> Appropriations Committee,
>> Statement to Senate Bill No. 309
>> (Jan. 26, 1978) (Committee
>> Statement).]
>
> In order to address the shortcomings in the
> existing statute, therefore, the Committee
> added the language imposing the obligation
> to respond within forty-five days and
> expanded the proposed limitation on a tax

14                                            A-2466-12T1

> appeal to preclude such an appeal in the case of a false or fraudulent account as well. Senate Bill No. 309 (pre-filed for 1978) (second reprint). Echoing the concerns expressed by the Sponsor, the Committee stated that it had added the forty-five day limitation to create an "orderly procedure" for the timely receipt and consideration of information by the assessor.
>
> [<u>Lucent</u>, <u>supra</u>, 201 <u>N.J.</u> 237, 246-47 (2010).]

The Court added that the requirement that the assessor enclose a copy of the statute with the information request "served to place the taxpayer on notice about the significant consequences of failing to respond . . . ." <u>Ibid.</u>

In <u>SAIJ Realty</u>, the plaintiff opposed the defendant's motion to dismiss its complaint seeking direct review of an assessment, and argued that the defendant had enclosed only the pre-amendment version of the statute, and made no reference whatever to the consequences to the taxpayer for a failure to comply. <u>SAIJ Realty, Inc. v. Town of Kearney</u>, <u>supra</u>, 8 <u>N.J. Tax</u> at 194. In denying the motion, Judge Crabtree explained that the statutory direction to the assessor to include the statute is "mandatory" and that the assessor's failure to include the "critical, substantive" 1979 amendment constituted a "palpable failure on [the] defendant's part to comply with the statute."

Id. at 196. Consequently, the "principles of fair dealing" required denial of the defendant's motion. Id. at 196-97.

The ruling in SAIJ Realty is sound, and while questions of statutory interpretation are purely legal and we review the holding of the Tax Court on questions of law de novo, Gallenthin Realty v. Borough of Paulsboro, 191 N.J. 344, 358 (2007), SAIJ Realty applies the well-settled principle that in interpreting a statute, the primary goal is to give effect to the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). The best indicator of that intent is the plain language of the statute itself. State v. D.A., 191 N.J. 158, 164 (2007). We therefore agree that the assessor's duty to provide property owners with the statute when tendering a Chapter 91 request is mandatory.

We also agree with Judge Crabtree's conclusion that where an assessor provides property owners with a copy of the statute that omits "critical [and] substantive" statutory provisions, principles of fair dealing preclude the assessor from seeking relief under the statute. However, where, as here, the omission is minor and inadvertent, does not alter the substance of the statute, and does not prejudice the property owner, the municipality is still entitled to a dismissal pursuant to N.J.S.A. 54:4-34.

As the Tax Court observed in <u>James-Dale Enters., Inc. v. Twp. of Berkeley Heights</u>, 26 <u>N.J. Tax.</u> 117, 126 (Tax 2011), while the government must "turn square corners" when dealing with the public,

> [t]he doctrine "cannot be applied with rigidity or undue technicality." <u>New Concepts For Living, Inc. v. City of Hackensack</u>, 376 <u>N.J. Super.</u> 394, 403, 22 <u>N.J. Tax</u> 616, (App. Div. 2005). Equitable relief under the doctrine "cannot be exercised or withheld rigidly, but [is] always subject to the guiding principles of fundamental fairness." <u>Id.</u> at 404.
>
> [<u>James-Dale</u>, <u>supra</u>, 26 <u>N.J. Tax</u> at 126.]

The duty of the assessor under the statute is to provide property owners with clear and correct notices. The assessor in the case before us fulfilled that duty. The minor alteration in the statute seized upon by plaintiff did not obscure or omit any substantive provision in the statute, and did not prejudice plaintiff in any respect. Consequently, plaintiff was not entitled to any equitable relief from the requirements of <u>N.J.S.A.</u> 54:4-34.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION